# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER  11-0012 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| SHONDOLYN ROCHELLE BLEVINS | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a
(second) motion to suppress [doc. # 59] filed by defendant Shondolyn Rochelle Blevins.  For
reasons stated below, it is recommended that the motion be **DENIED.**

On October 12, 2010, Louisiana State Trooper Chris Hollingsworth, with the assistance
of six other officers, executed an arrest warrant for Shondolyn Blevins at her residence, 1901
Conover Street, Monroe, Louisiana.  In the course of, and in the aftermath of the arrest, the
troopers uncovered various quantities of crack cocaine and a loaded firearm at the residence.
Later at the station house, Blevins confessed to possessing and selling crack cocaine and
possession of the firearm.

On January 26, 2011, a federal grand jury returned a three count indictment against
Blevins for possession with intent to distribute crack cocaine, possession of a firearm in
furtherance of drug trafficking, and felon in possession of a firearm in violation of 21 U.S.C. §§
814(a)(1) & (b)(1)(B) and 18 U.S.C. §§ 924(c)(1)(A) & 9223(g)(1).  The indictment also seeks
forfeiture of the firearm and ammunition.

On March 18, 2011, Blevins, via counsel, filed her initial motion to suppress all evidence

seized from her home and all statements that she made while in custody.  On July 15, 2011, the District Court entered judgment granting-in-part and denying-in-part the initial motion to suppress.  *See* July 14, 2011, Judgment adopting, May 31, 2011, Report & Recommendation [doc. #s 41 & 34].  In denying defendant's motion to suppress the physical evidence and station house inculpatory statements, the court relied upon the arrest warrant to support the  troopers' entry into Blevins' home.  In fact, in her initial motion, Blevins did not contest that the state police possessed a valid arrest warrant, supported by probable cause.

Since the time of the prior ruling, however, new counsel has enrolled on behalf of Blevins.  On October 6, 2011, Blevins' new counsel filed the instant, second motion to suppress, which challenges the validity of the arrest warrant.  The government filed its response on October 21, 2011.  A hearing was held before the undersigned magistrate judge on November 1, 2011.  The matter is now before the court.

### Hearing Testimony and Evidence

The following facts were established via testimony and evidence presented at the November 1, 2011, hearing held in this matter.  Testimony was provided exclusively by Louisiana State Police Trooper Christopher Hollingsworth.

Trooper Hollingsworth is a ten year veteran of the Louisiana State Police, assigned to the criminal intelligence unit.  In August 2010, Trooper Hollingsworth initiated an investigation of Shondolyn Blevins after the state police received an internet complaint alleging that Ms. Blevins had threatened the informant's life.  Hollingsworth checked Blevins' criminal history and learned that she had prior arrests and/or convictions for possession of controlled substances.  He also learned that Blevins continued to distribute crack cocaine.  Accordingly, Hollingsworth enlisted a confidential informant, who happened to be an acquaintance of the internet complainant, to

purchase controlled substances from Ms. Blevins.  Trooper Hollingsworth had not previously relied upon this particular confidential informant.  He explained, however, that before employing a confidential informant, it is the practice of the state police to vet the informant.  This entails a criminal background check, fingerprinting, and a family history.  After the check is completed, the confidential informant or  "CI" is assigned a number, and cleared for use.

In this case, Hollingsworth enlisted the CI to make five controlled purchases on August 24, 26, September 1, 9, and 27, 2010.  Prior to each purchase, Hollingsworth or another trooper searched the CI to ensure that she did not have any drugs or narcotics on her.  Also on each occasion, the state police fitted the CI with a hidden audio and video surveillance device.[1]  On each occasion after searching the CI, Hollingsworth accompanied her to a grocery store so she could purchase several drinks, candies, and/or ice as a "peace offering" to ensure that Ms. Blevins did not become violent during the encounters.  While at the grocery store, Hollingsworth kept Blevins constantly in his sight.

For each of the five transactions, Hollingsworth drove the CI to a drop-off location around the corner from 1911 Short Thomas Street, Monroe, Louisiana.  He did so to avoid counter-surveillance by look-outs employed by the drug dealer(s).  The CI then walked by herself to and from the transaction site at 1911 Short Thomas Street.[2]  Although the troopers did not maintain *constant* physical surveillance of the CI as she walked to the transaction site, Hollingsworth testified that they maintained periodic, roving surveillance.  Furthermore, the surveillance camera documented the CI's route.

---

[1]  Defendant submitted into evidence the surveillance recordings from all five of the controlled purchases.  (Def. Exhs. 1-5).

[2]  The last transaction was consummated at Blevins' residence at 1901 Conover Street, which appears to be behind 1911 Short Thomas Street.  *See e.g.*, Mapquest map; Gov.'t Exh. A.

3

The state police also did not observe the actual transfer of crack cocaine between the CI and Blevins.  Although the surveillance camera hidden on the CI failed to capture the face of the person who provided the drugs to the CI,[3] it did document, on at least one occasion, a seated woman with a tank-top handing the CI a small white substance.  *See* Aug. 26, 2010, Video @ 14:59:49-50; Def. Exh. 2.  During that transaction, a male voice is heard saying you bought it from me, whereupon a female voice added "and me."  *Id*.  After the transaction, the CI told Trooper Hollingsworth that Blevins was seated and wearing a tank-top.  *Id*.

The video from the fifth transaction documents the CI following a black woman wearing a white sweater to a trailer seemingly on Conover Street.  *See* Sept. 27, 2010, Video; Def. Exh. 5.  The video, when slowed to one frame per second, reveals the woman in the white sweater opening the door to the trailer, while apparently holding a small, indiscernible object between her right forefinger and thumb.  *Id*., @ 12:32:46.  The video later documents the CI handing Trooper Hollingsworth a small white substance.  *Id*.  The CI told Trooper Hollingsworth that she went into the suspect's house – i.e., the trailer.  *Id*.[4]

Each time that Trooper Hollingsworth picked up the CI, he retrieved crack cocaine from her.  Laboratory analysis confirmed that the substances that the CI turned over to Hollingsworth were crack cocaine.  Trooper Hollingsworth also reviewed the surveillance video before seeking an arrest warrant.  The voices and conversations on the surveillance audio indicated to Hollingsworth that Blevins was present with the CI.

On October 7, 2010, Hollingsworth presented an affidavit for an arrest warrant to the Honorable Ron Lewellyan, 4th Judicial District Court Judge for the Parish of Ouachita, State of

---

[3]  The camera typically was pointed in the air or towards the ground.

[4]  Albeit, the CI mistakenly described the suspect as wearing a small tank-top.  *Id*.

4

Louisiana.  Hollingsworth prepared the affidavit, which provides, in pertinent part, that

> I Tfc. C.C. Hollingsworth, Louisiana State Police, Criminal Intelligence Unit, who, having been by me duly sworn, did depose and say; that one **Shondolyn R. Blevins**, B/F, DOB: 09/13/1971, on the **24th and 26th day of August and the 1st, 9th, and 27th day of September, 2010, did violate R.S. 40.967 Distribution of CDS II/Crack Cocaine**, in that:
>
> On August 24, 2010, a Louisiana State Police Confidential Informant was provided an electronic monitoring device and official LSP buy money to purchase crack cocaine from Shondolyn Blevins.  The CI was kept under physical surveillance as he/she traveled to 1911 Short Thomas Street, Monroe.  The CI purchased two (2) rocks of suspected crack cocaine, total approximate weight .5 grams, from Shondolyn Blevins.  The evidence was tested by the North Louisiana Criminalistics Laboratory and was determined to be cocaine.

(Affidavit; Gov.'t Opp. Memo., Exh. 1).[5]

The ensuing four paragraphs of the affidavit follow almost verbatim the preceding paragraph, changing only the dates for each subsequent controlled purchase, the amount of crack cocaine, and the status of the CI to "reliable."  *Id.*

## Law and Analysis

Defendant contends that the physical evidence, and subsequent incriminating statements obtained as a result of her arrest, must be suppressed pursuant to the Fourth Amendment to the United States Constitution, as extended to the states via the Fourteenth Amendment.[6]  In her latest motion, Blevins contends that the affidavit submitted in support of the warrant that precipitated her arrest contained misrepresentations and omissions of fact that undermine the

---

[5]  At the hearing, the court stated that it would consider the affidavit because it was in the record as an exhibit to the government's memorandum.  Defendant had no objection.

[6]  Blevins also contends that the arrest warrant violated the Louisiana Constitution.  The exclusionary rule, however, discourages violations of the Fourth Amendment, not violations of state law:  "[t]he question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution."  *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006) (citation omitted).

validity of the warrant.[7]  Consequently, she concludes that the evidence and statements must be excluded.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Nevertheless, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Payton v. New York*, 445 U.S. 573, 602-603, 100 S.Ct. 1371, 1388 (1980) (emphasis added).[8]

The courts deter Fourth Amendment violations by excluding evidence obtained as a result of the transgression.  *See United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted).  This so-called exclusionary rule requires the suppression of evidence that is seized pursuant to a warrant unsupported by probable cause.  *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (citation omitted).  Moreover, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  *Gibbs, supra* (citation omitted).  Thus, "[e]vidence obtained during the execution of a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith."  *Id.*

---

[7]  The government did not adduce a copy of the arrest warrant.  Defendant, however, does not contest that a state court judge issued a warrant for her arrest premised upon the representations in the affidavit at issue herein.

[8]  The Supreme Court explained that,
[i]t is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law.
*Id.*

(emphasis in original).  If this good faith exception applies, then the inquiry ends.  *Gibbs, supra*.[9]

The government bears the burden of demonstrating that the good faith exception is applicable.

*United States v. Gant*,  759 F.2d 484, 487-489 (5th Cir. 1985).[10]

> The Fifth Circuit has further explained the good faith exception, as follows,
>
> [w]here the official action was pursued in complete good faith . . . , the deterrence rationale loses much of its force.  Therefore, if the officers obtained the evidence in objectively reasonable good-faith reliance upon a . . .  warrant, the evidence is admissible even though the affidavit on which the warrant was based was insufficient to establish probable cause.  The good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.  In conducting the good faith inquiry, the court may examine all of the circumstances surrounding the issuance of the warrant. [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.

*Pope, supra*.  (citations and internal quotation marks omitted).

Thus, a reviewing court is obliged to defer to a judge's probable cause determination in signing a warrant and uphold the officer's good faith reliance thereon, *unless*:

(1)     the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

(2)     the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant;

---

[9]  If the good faith exception does not apply, *then* the court must consider whether the warrant was supported by probable cause.  *Id.*
Although the courts normally consider the good faith exception in the context of search warrants, the exception also applies to arrest warrants.  *See United States v. Smith*, 354 Fed. Appx. 99 (5th Cir. Nov. 16, 2009) (unpubl.); *United States v. Stephens*, 983 F.2d 232, 1993 WL 4675 (5th Cir. Jan. 7, 1993) (unpubl.) (citations omitted).

[10]  In its memorandum, the government does not mention the good faith exception, by name.  However, it does cite cases and argument that fairly invoke the exception.

(3)     the underlying affidavit is "bare bones" (so lacking in indicia of
        probable cause as to render official belief in its existence entirely
        unreasonable); or

(4)     the warrant is so facially deficient . . . that the executing officers
        cannot reasonably presume it to be valid.

*Gibbs, supra* (citations and internal quotation marks omitted).

In her motion, defendant contends that the good faith exception is inapplicable because the affidavit contains various inaccuracies and/or omissions, including 1) that on five occasions a reliable confidential informant ("RCI") purchased crack cocaine from Blevins; 2) that Hollingsworth searched the RCI before dropping her off at 1911 Short Thomas Street; 3) the failure to disclose  that after Hollingsworth searched the RCI (but before the controlled buys), he drove the RCI to a store where she purchased certain grocery items; 4) that the videos show that the RCI was not dropped off at 1911 Short Thomas Street, but several blocks away; and 5) that none of the surveillance videos actually depict Blevins distributing cocaine to the RCI.[11]  As defendant's arguments do not fairly invoke considerations two or four to the good faith exception, the court's focus is upon the remaining two qualifiers.

a)     <u>The Affidavit is more than Bare Bones</u>

An affidavit is deemed "bare bones" when it contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321-322 (5th Cir. 1992) (citation omitted).  Stated differently, a bare bones affidavit "is so deficient in demonstrating probable cause that it renders an officer's belief in [the existence of probable cause] completely unreasonable."  *United States v. Bowens*, 108 Fed. Appx. 945 (5th Cir. Sept. 17, 2004) (unpubl.),

---

[11]  Blevins concedes that she does appear in the videos.

8

*sentence vacated*, 543 U.S. 1181, 125 S.Ct. 1410 (2005).

The affidavit at issue here alleges, *inter alia*, that 1) on five occasions the state police used a CI/RCI equipped with an electronic monitoring device to purchase crack cocaine from defendant; 2) the CI/RCI was kept under physical surveillance as she traveled to 1911 Short Thomas Street (and on one occasion, to 1901 Conover Street); 3) on each occasion, the CI/RCI purchased varying amounts of crack cocaine from defendant; and 4) laboratory testing confirmed that the evidence was cocaine.  The instant affidavit is more than bare bones.  *See Gibbs, supra* (an officer may rely in good faith on warrant supported by an affidavit that describes a "single drug buy conducted by a confidential informant" even when the officer who executed the warrant is the same officer who supervised the controlled buy and who swore out the affidavit); *Bowens, supra* (an affidavit that describes a CI's controlled purchases of crack cocaine from the defendant is more than a bare bones affidavit); *Satterwhite, supra*; (affidavit not bare bones where the affiant reported that the CI had personally accompanied a third person to an apartment for the purpose of buying cocaine, and the CI observed the third person enter the apartment and return carrying cocaine).

     b)     <u>The Affidavit is Neither False nor Misleading</u>

Defendant appears to contest Hollingsworth's characterization of the CI as "reliable." Indeed, when an affidavit is based on information supplied by a confidential informant, the reviewing court must examine the informant's veracity and basis of knowledge to determine if in the "totality of the circumstances" the information is credible.  *United States v. Hardaway*, 261 Fed. Appx. 715 (5th Cir. Jan. 9, 2008) (unpubl.) (citing *inter alia*, *United States v. Satterwhite*,

*supra*).[12]  However, an agent may describe a previously untested CI as "reliable" when the CI's allegations are confirmed by controlled buys.  *Bowens, supra*.  Those circumstances are present here.  At the hearing, Trooper Hollingsworth emphasized that although his affidavit characterized the CI as "reliable" for purposes of the last four controlled purchases, he intentionally withheld that label for the first controlled purchase, because her reliability was unverified at that time. After the first transaction, however, the CI became a "reliable" source.[13]

At the hearing, defense counsel also seemed to question the reliability and credibility of the CI because she was acquainted with the initial internet informant who may have had an "axe to grind" with the defendant.  An informant's questionable motives, however, may be overcome by particular details in the informant's tip and evidence of the informant's trustworthiness.  *See United States v. Copeland*, 538 F.2d 639 (5th Cir. 1976) (abrogated on other grounds).  In the case, *sub judice*, the five controlled buys, supported by an electronic monitoring device, provide the requisite authentication and corroboration under the totality of the circumstances.  *See e.g., Bowens, supra* and *Mays, supra*.  Furthermore, when, as here, a CI provides a statement to the police that may place her in danger, it is unlikely that the accusation is baseless.  *See United States v. Phillips*, 727 F.2d 392, 398 n2 (5th Cir. 1984) (citing *United States v. Jackson*, 544 F.2d

---

[12]  Relevant considerations include,
(1) the nature of the information; (2) whether there has been an opportunity for the police to see or hear the matter reported; (3) the veracity and the basis of the knowledge of the informant; [and] (4) whether there has been any independent verification of the matters reported through police investigation.
*United States v. Mays*, 466 F.3d 335 (5th Cir. 2006) (citations omitted).

[13]  The fact that the instant affidavit does not directly explain the reasons why the CI should be considered reliable is not fatal; the judge reasonably could have inferred the grounds for the CI's reliability from the affidavit.  *United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991) (citing, *inter alia*, *United States v. Wylie*, 919 F.2d 969, 975 (5th Cir.1990)).

407 (9th Cir. 1976)).[14]

Defendant's remaining challenges to the affidavit prove similarly unavailing.  The alleged inaccuracy regarding the precise location where Hollingsworth dropped off the CI before she encountered Blevins does not materially distort actual facts or show reckless disregard for the truth.  *See United States v. Harris*, 413 Fed. Appx. 754 (5th Cir. Feb. 22, 2011) (unpubl.) (good faith still applicable despite inaccuracies in the affidavit regarding at what point the CI was seen departing the defendant's apartment, and where it was the officer who provided the defendant's address, rather than the CI, as averred).  Moreover, the affidavit's omission of Hollingsworth's pre-buy search practices, the intervening grocery store visits, and the fact that the CI was not under constant surveillance as she traveled to the transaction site, are not material oversights. *See Satterwhite, supra* (failure to search participant prior to drug transaction did not preclude finding of probable cause for the warrant).  Also, there is no requirement that an affidavit detail how the affiant gathered the information.  *Harris, supra* (citation omitted).  Additionally, characterizing facts in a certain way does not render them false: "if a statement can be read as true, it is not a misrepresentation."  *Bowens, supra* (citation omitted).

Finally, Hollingsworth's failure to disclose in his affidavit that the video surveillance did not incontrovertibly establish Blevins' role in the drug transaction does not enervate Hollingsworth's good faith reliance on the arrest warrant.  *See Bowens, supra* (officers still acted in good faith where they failed to divulge that defendant's voice could not be heard on the audiotape, that their source was a drug addict, and that no agent actually witnessed the drug transaction).  Furthermore, on at least two occasions, the videos reveal a black female handing

---

[14]  Blevins easily will discern the CI's identity, not only from the dates on the warrant affidavit, but also from the video surveillance tapes.

the CI a small substance.  *See* discussion, *supra*.  In addition, the last controlled transaction was

consummated in a trailer where defendant was known to reside.  *Id*.

**Conclusion**

In this case, the facts set forth in the search warrant affidavit were not so insufficient or

misleading as to preclude a law enforcement officer's "objectively reasonable reliance" upon the

judge's probable cause determination.  Accordingly, the good faith exception applies, and the

second step of the suppression analysis is pretermitted.  *United States v. Nguyen*, 172 Fed. Appx.

558 (5th Cir. 2006) (unpubl.).

For the above-stated reasons,

**IT IS RECOMMENDED** that the (second) motion to suppress [doc. # 59] filed by

defendant Shondolyn Rochelle Blevins be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen(14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 7th day of November 2011.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE